**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Earl FORBES, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2004.
Filed Jan. 28, 2005.

Marc J. Frumer, Philadelphia, for appellant.

William G. Young, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: STEVENS, GANTMAN, and KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Earl Forbes, appeals from his judgment of sentence and asks us to determine whether the verdict was against the weight of the evidence and whether the court erred in charging the jury on the elements of burglary. Appellant also asks us to determine whether the court erred in applying Pennsylvania's "two-strikes" sentencing statute. Specifically, Appellant claims 42 Pa.C.S.A. § 9714(a)(1) offends due process under the United States and Pennsylvania Constitutions. We hold the verdict was not against the weight of the evidence and Appellant's challenge to the court's jury instruction on the elements of burglary is waived. We further hold the court's application of Section 9714(a)(1) did not offend Appellant's due process rights under the United States and Pennsylvania Constitutions. Accordingly, we affirm.

¶ 2 The trial court opinion sets forth the relevant facts of this case as follows.

The complainant, Daniel P. Kelly, testified that in the evening of July 7, 2002, he left his apartment at 5008 Penn Street in Philadelphia and went for a walk. Mr. Kelly met Appellant briefly during the walk. When Kelly returned home and went to the dumpster behind his house, he again saw Appellant sitting on the fire escape steps. The two struck up a conversation, which eventually became sexual in nature. The complainant invited Appellant into his apartment where they engaged in consensual sexual activity.

When this concluded, the complainant gave Appellant approximately ten dollars ($10) in coins and they left the apartment. The complainant went to buy beer, and the two men agreed to meet again in a few minutes at the first floor fire escape landing. The complainant returned to his apartment with the beer and saw Appellant on the back steps. [The complainant] invited [Appellant] up to the apartment and the two began drinking beer. Appellant's mood then began to change. He became "very hostile." Appellant asked for

more money. The complainant asked Appellant to leave and Appellant did. Approximately twenty minutes later, the complainant again saw Appellant outside his apartment with a female companion. The complainant went downstairs and Appellant's female companion said "I want to use your f——ing bathroom and I'm going to use it." The complainant replied "You have a good evening and get off the property," and went back upstairs.

A few minutes later, the complainant noticed his doorknob turning and immediately called 911. Almost simultaneously, Appellant entered the apartment through the kitchen door. Appellant began choking [the complainant], beating him, and dragging him around the apartment on his knees while saying "all kinds of obscenities." During the attack, Appellant attempted to crush the complainant's ankle by stepping on it with great force, about ten times. The complainant was in great pain and could see his anklebone "protruding out." During the attack, the complainant thought he "was going to die a violent death." Appellant also bit the complainant on the hand during the attack.

Because of the attack, [the complainant] suffered multiple fractures of the fibula and had fluid on his knee. The ankle remained in a cast for six (6) to eight (8) weeks. At the time of trial, about six (6) months after the attack, the complainant still suffered from residual pain in the ankle and knee.

Philadelphia Police Officer Ernest Walker arrived because of the 911 call. He noticed that the TV was turned over and that the dead bolt lock was no longer attached to the door. He also saw the complainant's ankle swollen. Police officer Walker took flash information, took the complainant to the Detective Division for an initial interview and then took the complainant to the hospital for treatment. When they arrived at the hospital Appellant was outside the hospital. The complainant identified him as the attacker and the officer arrested Appellant.

Medical evidence introduced by way of stipulation indicated the complainant was treated at Frankfor[d] Hospital in the early morning of July 8, 2002, for an abrasion to the left wrist, for an abrasion of the right knee and for a distal fibula fracture of the right ankle and right foot.

(Trial Court Opinion, filed February 20, 2004, at 2–4) (internal citations omitted).

¶ 3 The jury convicted Appellant of burglary,[1] simple assault,[2] and aggravated assault.[3] Following preparation and review of a presentence investigation report, the court sentenced Appellant to a mandatory minimum sentence of 10 to 20 years' imprisonment under the second or subsequent offense provisions of 42 Pa.C.S.A. § 9714(a)(1).

¶ 4 At sentencing, Appellant argued the "two strikes" sentencing provision of Section 9714(a)(1) violated the *Ex Post Facto* Clause under Article 1, Section 10 of the United States Constitution, and Article 1, Section 17 of the Pennsylvania Constitution. Specifically, Appellant argued Section 9714 was unconstitutional, because his prior convictions for violent crimes, upon which the penalty enhancement would be based, occurred prior to the enactment of Section 9714.[4] The court disagreed and

---

1. 18 Pa.C.S.A. § 3502(a).

2. 18 Pa.C.S.A. § 2701(a)(1).

3. 18 Pa.C.S.A. § 2702(a)(1).

4. There is no dispute that Appellant's current convictions occurred after the legislature enacted the most recent version of Section 9714

imposed the mandatory minimum sentence required under Section 9714. Appellant filed a post-sentence motion claiming, *inter alia*, the verdict was against the weight of the evidence. The motion also claimed that Section 9714 is unconstitutional as follows:

11. The second strike provision is unconstitutional because it automatically enhances punishment for past conduct which had not previously been used to enhance punishment. Further, there is no prohibition as to how remote, or under what circumstances the "first strike" was obtained. Thus, the second strike law acts as an *ex post facto* law. Consequently, [Appellant] asserts that this sentencing law is unconstitutional under both the United States and Pennsylvania Constitutions.

12. The second strike law, in its application, is also illegal. [Appellant] asserts that it should not be applied retroactively, *i.e.* "strikes" should be tabulated from the time of its passing by the legislature. Thus, the "calling" of "strikes" should not include those before the "game" was even initiated. [Appellant's] first "strike" was in 1991!

(Appellant's Post–Sentence Motion at 3).

¶ 5 The court denied Appellant's motion and this timely appeal followed. Appellant timely complied with the court's directive to file a Rule 1925(b) statement. In his concise statement, Appellant alleged, *inter alia*, the verdict was against the weight of the evidence and "the Pennsylvania 'two strikes' rule is unconstitutional" without further elaboration. (Appellant's Rule 1925(b) Statement at 2).

¶ 6 On appeal, Appellant raises three issues for our review:

WERE THE VERDICTS OF GUILTY ON ALL CHARGES SUPPORTED BY THE WEIGHT OF THE EVIDENCE?

on December 20, 2000, P.L. 811, No. 113,

DID THE TRIAL COURT ERR IN INSTRUCTING THE JURY THAT AN ELEMENT OF BURGLARY IS "THIRD, THAT [APPELLANT] ENTERED THE PLACE WITH THE INTENT TO COMMIT THE CRIME OF AGGRAVATED ASSAULT?"

IS THE PENNSYLVANIA "TWO STRIKES" SENTENCING LAW UNCONSTITUTIONAL?

(Appellant's Brief at 5).

■ ¶ 7 Appellant first claims entitlement to a new trial because the victim's testimony at trial was so conflicting and contradictory, the jury's resulting verdict was against the weight of the evidence. Specifically, Appellant asserts: 1) the victim's trial testimony conflicted with his statement to police on the night of the incident; 2) the victim's trial testimony regarding Appellant's entry into the apartment was internally inconsistent; 3) the victim's trial testimony regarding the severity of his injuries was contradictory to the medical evidence; and 4) the victim's trial testimony regarding his and Appellant's use of intoxicants on the night in question conflicted with his trial testimony that he was a recovering substance abuser. Appellant argues the victim "gave conflicting testimony on every material point from the witness stand, as well as to the police. Indeed his testimony can be characterized as **both** 'false in one' **and** 'false in all.'" (Appellant's Brief at 15). Thus, Appellant concludes the court erred in denying his request for a new trial. We disagree.

■ ¶ 8 Our standard of review in cases involving the denial of a new trial based on a weight of the evidence claim is subject to the following principles:

The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence

§ 2, effective February 19, 2001.

and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, — U.S. —, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (internal citations omitted); *Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745 (2000). It is not the function of an appellate court to re-assess the credibility of the witnesses' testimony. *Commonwealth v. Aguado*, 760 A.2d 1181, 1184 (Pa.Super.2000) (*en banc*). Instead, we review the trial court's exercise of discretion. *Commonwealth v. Riley*, 811 A.2d 610, 616 (Pa.Super.2002).

¶ 9 The scope of a trial court's discretion to address a post-verdict weight claim is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative to give right another opportunity to prevail. *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111, 112 (1991) (*en banc*), *appeal denied*, 529 Pa. 668, 605 A.2d 333 (1992). Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. *Widmer, supra* at 322, 744 A.2d at 753. When the record adequately supports the trial court, the trial court has

acted within the limits of its judicial discretion. *Riley, supra.* "Our Supreme Court has repeatedly emphasized: 'One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.' " *Commonwealth v. Davidson*, 2004 PA Super 396, 13, 860 A.2d 575 (filed Oct 14, 2004) (quoting *Widmer, supra* ).

¶ 10 Instantly, the victim never wavered in his averments that Appellant entered his apartment without permission and severely beat him, even though the victim's testimony was perhaps less than precise regarding certain essentially irrelevant details. Moreover, the victim's testimony was corroborated by physical evidence. For example, a dead bolt lock on the victim's kitchen door was forced and broken, a television was lying on the floor, and the victim's ankle and foot were fractured.

¶ 11 Further, during closing argument Appellant's counsel stated: "In this case, ladies and gentlemen, the [victim] was not credible and I would like to go through some examples of his testimony." (N.T. Trial, 1/6/03, at 12). Counsel then presented numerous examples of alleged inconsistencies in the victim's testimony, and argued with great zeal to the jury that the victim "was vengeful. He lied and he exaggerated." (*Id.* at 13). "He rambled on with all his testimony on direct and he wouldn't answer my questions." (*Id.*) "If you conclude that a witness was not truthful about a material fact, then you may disregard that entire testimony." (*Id.* at 14). "It did not happen in the fashion the [victim] says." (*Id.*) "I would ask you to disregard his testimony." (*Id.*) "[H]e's not telling the truth." (*Id.* at 18). "[H]e's not being truthful with you." (*Id.* at 19). "He's not credible. He fabricated it." (*Id.* at 20). "[The victim's] story does not make sense." (*Id.*)

¶ 12 Further, the court gave the jury a *"falsus in unum, falsus in omnibus"* charge as follows:

If you conclude that one of the witnesses testified falsely and did so intentionally about any fact which is necessary to your decision in this case, then for that reason alone you may, if you wish, disregard everything that that witness said. However, you are not required to disregard everything the witness said for this reason: It is entirely possible that the witness testified falsely, and intentionally so in one respect, but truthfully about everything else. If you find that to be the situation, then you may accept that part of his testimony which you find to be truthful and which you believe and you may reject that part which you find to be false and not worthy of belief.

(*Id.* at 44–45).

¶ 13 In denying Appellant's motion for a new trial, the court conducted a thorough review of the evidence presented at trial and concluded "under no circumstances was this verdict so contrary to the evidence as to shock one's sense of justice." (Trial Court Opinion at 2). The record adequately supports the trial court's determination. For example, as explained, physical evidence supported the victim's testimony. Further, the court instructed the jury that its duty was to resolve conflicts in the evidence wherever possible, and to consider whether any conflict involves a matter of importance in its decision. Of course, the jury was free to believe all, part, or none of the evidence. *See Champney, supra.* Thus, we see no abuse of discretion in the court's denial of Appellant's request for a new trial on this basis. *See Champney, supra; Widmer supra; Aguado, supra; Riley supra.* Accordingly, we reject Appellant's issue.

■ ¶ 14 Appellant next claims the court erred when it instructed the jury on the elements of burglary. However, Appellant did not object to the charge. Thus, we conclude the issue is waived. *See Commonwealth v. McCloskey,* 835 A.2d 801 (Pa.Super.2003), *appeal denied,* 577 Pa. 713, 847 A.2d 1281 (2004) (holding specific and timely objection must be made to preserve challenge to particular jury instruction; failure to do so results in waiver).

■ ¶ 15 Appellant next claims the United States Supreme Court's ruling in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), requires any finding of fact which increases the maximum penalty, including the finding of a "prior conviction," be determined by a jury beyond a reasonable doubt. (Appellant's Brief at 25). Appellant additionally argues the holdings in two nineteenth-century Pennsylvania cases, *Smith v. Commonwealth,* 14 Serg. & Rawle 69 (1826) and *Rauch v. Commonwealth,* 78 Pa. 490 (1875), require a jury to determine the existence of a prior conviction beyond a reasonable doubt. Appellant concludes Pennsylvania's "two strikes" sentencing law, 42 Pa.C.S.A. § 9714(a)(1), offends due process under the United States and Pennsylvania Constitutions, because the statute permits the trial court to usurp the jury's function to consider and determine beyond a reasonable doubt, facts which increase the **minimum** penalty implicated.

■ ¶ 16 Before we consider the merits of Appellant's last issue, we must examine whether it is waived. Appellant challenged the constitutionality of Section 9714 as an *ex post facto* law before the trial court. On appeal, Appellant has abandoned his *ex post facto* claim and challenges Section 9714, alleging a due process violation not raised below. Generally, "issues not raised before the lower court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Mouzon,* 571 Pa. 419, 430, 812 A.2d 617, 624 (2002). However, we recognize an excep-

tion to the above rule for issues challenging the legality of sentence. *Commonwealth v. Aponte,* — Pa. —, —, 855 A.2d 800, 802 (2004). *Accord Commonwealth v. Bromley,* 2004 PA Super 422, 3, 862 A.2d 598 (filed Oct 29, 2004).

¶ 17 The Commonwealth, in reliance upon *Commonwealth v. Williams,* 787 A.2d 1085 (Pa.Super.2001), suggests Appellant's issue challenges the discretionary aspects of sentencing. Accordingly, the Commonwealth posits it should be deemed waived for Appellant's failure to challenge the discretionary aspects in a post-sentence motion and to include in his brief on appeal a concise statement of reasons for allowance of appeal pursuant to Rule 2119(f).

¶ 18 In *Williams,* the appellant challenged the constitutionality of 42 Pa.C.S.A. § 9712 which requires imposition of a five-year mandatory **minimum** sentence for any offense committed by a person in visible possession of a firearm. The issue was whether the statute violates due process because it permits the court to determine whether a defendant visibly possessed a firearm during the commission of a crime without proof beyond a reasonable doubt. *Id.* at 1087. The appellant styled his issue as a challenge to the legality of his sentence. *Id.* at 1086. This Court stated as follows:

Because there is no dispute that Appellant's sentence was within statutory limits, or that the court had jurisdiction to enter such sentences, Appellant's challenge does not go to the legality of sentence imposed. Rather, we understand a claim that a court relied on an unconstitutional statute when it sentenced a defendant is a challenge to the discretionary aspects of sentencing.

*Id.* at 1087. This Court held the sentencing issue was waived because the appellant had failed to raise a proper challenge the

discretionary aspects of sentence before the trial court or on appeal. *Id.*

¶ 19 On the other hand, in *Commonwealth v. Wynn,* 760 A.2d 40 (Pa.Super.2000), *reversed on other grounds,* 567 Pa. 183, 786 A.2d 202 (2001), this Court held a challenge to the constitutionality of the mandatory **minimum** sentencing provisions under 42 Pa.C.S.A. § 9714 raised a challenge to the legality of the sentence. Accordingly, the panel rejected the Commonwealth's suggestion that the issue raised on appeal was waived by the appellant's failure to raise it below. The Superior Court reasoned:

A legality issue is essentially a claim that the trial court did not have jurisdiction to impose the sentence that it handed down. . . . A trial court ordinarily has jurisdiction to impose any sentence which is within the range of punishments which the legislature has authorized for the defendant's crimes. We recognize Mr. Wynn's sentence of ten to twenty years' imprisonment is within the statutorily authorized maximum notwithstanding application of § 9714. Nonetheless, the court imposed the instant sentence pursuant to the dictates of § 9714 and was thereby denied its discretion to impose a lesser sentence. Thus, if § 9714 were found to be unconstitutional, to the extent the court may have imposed a lesser sentence in the absence of § 9714, Appellant is serving an illegal sentence.

*Id.* at 44 (quotation marks, citations and footnotes omitted).

¶ 20 Further, in *Aponte, supra,* the question was "whether 35 P.S. § 780–115(a), which doubles the statutory **maximum** penalty upon proof of a prior conviction for a similar offense [related to drug distribution], without requiring proof beyond a reasonable doubt before a jury, violates due process under the Pennsylva-

nia and United States Constitutions." *Id.* at 802 (emphasis added). Our Supreme Court noted as follows:

> The Commonwealth argues this issue is waived because appellant failed to raise it in the trial court or in his Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal, but raised it for the first time in his brief to the Superior Court. However, in a similar situation, where an appellant failed to challenge the constitutionality of his sentence in post-sentence motions or in his Rule 1925(b) statement, the Superior Court held the issue implicated the legality of sentence and was thus non-waivable. *Commonwealth v. Wynn,* 760 A.2d 40 (Pa.Super.2000). This Court granted allowance of appeal and did not hold the issue was waived, but rather concluded *per curiam* reversal was appropriate because the sentencing statute had been declared unconstitutional in *Commonwealth v. Butler,* 563 Pa. 324, 760 A.2d 384 (2000). *Commonwealth v. Wynn,* 567 Pa. 183, 786 A.2d 202 (2001). Recently, in *Commonwealth v. Belak,* 573 Pa. 414, 825 A.2d 1252 (2003), the appellant raised an *Apprendi* issue in his brief to this Court, but had not first included it in his petition for allowance of appeal. We held, "Although arguments of an unlawful sentence cannot be waived, *see, e.g. Commonwealth v. Walker,* [ ]468 Pa. 323, 362 A.2d 227, 230 ( [ ] 1976), this issue is not properly before this court. Belak did not raise this issue in his petition for allowance of appeal or in his initial brief to this Court, but rather, raised it for the first time in his reply brief. As such it would be improper for us to consider this issue." *Belak,* at 1256 n. 10. Here, appellant's issue raises a challenge to the legality of his sentence, and was raised in his petition

for allowance of appeal; we will consider the issue.

*Id.* at 802 n. 1.

¶ 21 Essentially, there is conflicting authority in the Superior Court regarding whether a constitutional challenge to a statute requiring a mandatory **minimum** sentence represents a challenge to the legality of sentence or the discretionary aspects of sentencing. *See Williams, supra; Wynn, supra.* Our Supreme Court's examination in *Aponte* is of little resource in resolving the conundrum, because the statute at issue in *Aponte* requires a court to sentence beyond the statutory **maximum** when certain factors are present. The *Aponte* issue is not before us in this appeal.

■■■■■ ¶ 22 We need not resolve this dilemma instantly, because Appellant is entitled to no relief. To the extent Appellant's constitutional claim represents a challenge to the discretionary aspects of sentencing, it is waived for failure to raise and preserve the issue in a proper manner. *See Williams, supra.* To the extent Appellant's issue represents a challenge to the legality of sentence we can review it under the following principles.

> We begin our analysis by recognizing that there is a strong presumption in the law that legislative enactments do not violate the constitution. Moreover, there is a heavy burden of persuasion upon one who challenges the constitutionality of a statute. As a matter of statutory construction, we presume the "General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth." A statute will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution; all doubts are to be resolved in favor of finding constitutionality.

*Aponte* at ——, 855 A.2d at 802 (citations omitted).

¶ 23 Section 9714 provides, in pertinent part:

### § 9714. Sentences for second and subsequent offenses

**(a) Mandatory sentence.—**

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement notwithstanding any other provision of this title or statute to the contrary.

**(d) Proof at sentencing.—**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section.

**(g) Definition.—**As used in this section, the term "crime of violence" means . . . aggravated assault as defined in 18 Pa.C.S.A. § 2702(a)(1) or (2)[,] . . . burglary of a structure adapted for overnight accommodation in which at the time of the offense any person is present[.]

42 Pa.C.S.A. § 9714(a)(1), (d), (g).

¶ 24 In *Apprendi, supra,* the United States Supreme Court specifically stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory **maximum** must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. at 2362–63, 147 L.Ed.2d at 455 (2000) (emphasis added). The Pennsylvania Supreme Court stated the *Apprendi* decision expressly delineates a "prior conviction" exception to the general rule requiring a jury to determine beyond a reasonable doubt, any facts that increase the penalty for a crime beyond the prescribed statutory **maximum.** *Aponte, supra.*

¶ 25 The United States Supreme Court also considered the constitutionality of the Pennsylvania statute which requires a five year mandatory **minimum** sentence for offenders who commit crimes while visibly possessing a firearm, 42 Pa.C.S.A. § 9712. *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67. (1986). The Court reasoned:

Section 9712 neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it without the finding of visible possession of a firearm. Section 9712 "ups the ante" for the defendant only by raising to five years the minimum sentence which may be imposed within the statutory plan.

*Id.* at 87–88, 106 S.Ct. at 2416, 91 L.Ed.2d at 77. The Court concluded Section 9712 did not offend federal due process. *See id.*

¶ 26 Instantly, Appellant's reliance on *Apprendi* is misplaced. First, contrary to Appellant's argument on appeal, *Apprendi* expressly delineates an exception to the general rule for "prior convictions." *See Apprendi, supra; Aponte, supra.* This procedure does not violate Appellant's due process rights, as his prior convictions are a matter of record. *See Apprendi* at 488–90, 120 S.Ct. 2348. Moreover, Section 9714 requires the proof to be a matter of record and provides a method by which Appellant might challenge the accuracy of the record of his prior convictions. *See* 42 Pa.C.S.A. 9714(d).

¶ 27 Second, and most importantly, *Apprendi* is inapposite to a determination of the legality of Section 9714(a)(1), because Section 9714(a)(1) does not increase the statutory **maximum** for a felony of the first degree. Instead, Section 9714(a)(1) sets forth a mandatory **minimum** penalty.[5] In that respect, Section 9714(a)(1) is strikingly similar to Section 9712, which the United States Supreme Court already determined was constitutional. Section 9714(a)(1) does not alter the maximum penalty for the crime committed nor create a separate offense calling for a separate penalty; it operates solely to limit the

sentencing court's discretion in selecting a penalty within the range already available to it. *See McMillan, supra.* Accordingly, to the extent Appellant's claim raises a reviewable challenge to the legality of his sentence, we conclude Section 9714(a)(1) does not violate federal due process guarantees. *See Apprendi, supra; McMillan, supra; Aponte, supra.* This does not end our inquiry however.

■ ¶ 28 Appellant additionally claims Section 9714(a)(1) violates due process under the Pennsylvania Constitution, because it permits the trial court to usurp the jury's function to consider and determine beyond a reasonable doubt, facts which increase the minimum penalty implicated. Appellant does not argue the Pennsylvania Constitution provides greater protection than the United States Constitution. Instead, Appellant relies on two nineteenth-century Pennsylvania cases, *Smith, supra,* and *Rauch, supra,* for the proposition that a jury must determine the existence of a prior conviction beyond a reasonable doubt for purposes of sentencing a defendant as a recidivist.[6] We disagree.

¶ 29 This Court has recently stated "there is no right to jury sentencing found in the Pennsylvania Constitution." *Commonwealth v. Nguyen,* 834 A.2d 1205, 1209 (Pa.Super.2003). We also consider *Com-*

---

**5.** Appellant's instant burglary conviction triggered the enhancement. 18 Pa.C.S.A. § 3502 provides burglary "is a felony of the first degree." The maximum sentence for a first degree felony conviction is 20 years. 18 Pa. C.S.A. § 1103. Section 9714(a)(1) sets forth a mandatory minimum of 10 years. The court sentenced Appellant to 10 to 20 years' imprisonment.

**6.** Appellant failed to set forth his constitutional claim in the manner suggested by *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991). The *Edmunds* Court detailed four significant factors litigants should analyze to aid our courts in reviewing state con-

stitutional claims: "1) text of the Pennsylvania constitutional provision; 2) history of the provision, including Pennsylvania case-law; 3) related case-law from other states; 4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence." *Id.* at 390, 586 A.2d at 895. Failure to address these four factors does not result in waiver if the appellant "clearly raises a claim under the Pennsylvania Constitution, cites cases in support of his claim, and relates the cases to the claim." *Commonwealth v. White,* 543 Pa. 45, 50, 669 A.2d 896, 899 (1995). Appellant's claim is sufficiently set forth under *White.*

*monwealth v. Griffin,* 804 A.2d 1 (Pa.Super.2002). In *Griffin,* this Court held:

> Contrary to Appellant's assertions, *Smith v. Commonwealth,* 14 Serg. & Rawle 69 (1826) does not stand for the proposition that a jury must decide whether a defendant is a recidivist. In *Smith,* our Supreme Court held that a defendant whose prior convictions were not alleged in the bill of indictment, and which did not appear of record, could not be punished as a repeat offender. *Id.* at 70. *Smith* does not state that the defendant was entitled to have the jury probe the question of his repeat offender status. Rather, the decision chastises the Commonwealth for filing a faulty indictment and for failing to produce a proper record.
>
> Appellant also cites *Rauch v. Commonwealth,* 78 Pa. 490 (1876), in support of his purported rights to a jury trial to prove the fact of his prior drug-related convictions. In *Rauch,* the defendants were charged with unlawfully selling liquor. The bill of indictment did not allege that this was a second offense for the defendants, nor did the Commonwealth establish the fact of any prior convictions through the introduction of evidence to that effect. Nevertheless, the trial judge *sua sponte* raised the existence of prior convictions because he knew of them from a source other than the indictment or trial. Our Supreme Court held that it was improper for a court to sentence pursuant to facts *dehors* the record in contradiction of the indictment. *Rauch,* 78 Pa. at 494–95. In the present case, the trial court did not rely on facts not of record when sentencing Appellant.

*Id.* at 17.

¶ 30 Appellant "respectfully submits that *Griffin* was incorrectly decided" and argues "*Griffin* is inconsistent with over a century of Pennsylvania case law interpreting *Smith* and *Rauch* as demanding a jury trial for determination of prior offenses in recidivist sentencing cases." (Appellant's Brief at 27). In essence, Appellant asks us to revisit this Court's holding in *Griffin.* This Court has stated.

> It is well settled…that until the Supreme Court overrules a decision of this Court, our decision is the law of this Commonwealth. *Commonwealth v. Leib,* 403 Pa.Super. 223, 588 A.2d 922, 932 (1991). This rule is not ironclad; we may reject the principle of *stare decisis* when we determine that a past precedent is no longer in accord with modern realities and the rationale justifying the old rule no longer finds support. *Id.*

*Commonwealth v. Martin,* 727 A.2d 1136, 1141 (Pa.Super.1999). Even if the rule announced in *Smith* and *Rauch* actually stated a jury must determine the fact of a prior conviction in Pennsylvania before a court may impose a recidivist enhancement, *Smith* and *Rauch* would be at odds with modern realities. We see no reason to deviate from the principle of *stare decisis* to circumvent holdings set forth by this Court **within the last two years.** *See Nguyen, supra; Griffin, supra.* We conclude Appellant's state constitutional claim lacks merit.

¶ 31 Based upon the foregoing, we hold the verdict was not against the weight of the evidence and Appellant's challenge to the court's jury instruction on the elements of burglary is waived. We further hold the court's application of Section 9714(a)(1) did not offend Appellant's due process rights under the United States and Pennsylvania Constitutions. Accordingly, we affirm the judgment of sentence.

¶ 32 Judgment of sentence affirmed.